**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*
AMY JOHNSGARD (279795)
*ajohnsgard@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-4990

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*
9415 Culver Blvd., #115
Culver City, CA 90232-2616
Tel: (619) 400-4990

*Counsel for Plaintiffs and the Proposed Class.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## DIVISION

| | |
|---|---|
| NICOLE KING, an individual; COSMO CONTOUR & SPA LLC, a California limited liability company; JENNIFER TABIZA, an individual; and JENNIFER TABIZA OPTOMETRIST, APC, a California professional corporation, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>BTL Industries, Inc., a Delaware Corporation; MMP CAPITAL, INC., a New York Corporation; DEXT CAPITAL, LLC, a Delaware limited liability company; TIMEPAYMENT CORP., a Delaware Corporation; NORTH MILL CREDIT TRUST, a Delaware Association; AMUR EQUIPMENT FINANCE, INC., a Nebraska corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Civil Case No.: 2:25-cv-6658<br><br>**CLASS ACTION COMPLAINT**<br><br>*[SEEKS STATEWIDE OR NATIONWIDE RELIEF]*<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs Nicole King, Cosmo Contour & Spa LLC,  Jennifer Tabiza, and Jennifer Tabiza Optometrist, APC (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their counsel, bring the following Complaint against Defendants BTL Industries, Inc. ("BTL"), MMP Capital, Inc. ("MMP"), Dext Capital, LLC ("DEXT"), Timepayment Corp. ("TIMEPAYMENT"); North Mill Credit Trust ("NORTH MILL"); Amur Equipment Finance, Inc. ("AMUR") and DOES 1-10 (collectively referred to herein as "Defendants").

## NATURE OF THE ACTION

1.      Plaintiffs bring this action individually, and on behalf of all other similarly situated purchasers of cosmetic medical devices produced, sold, and financed by Defendants, who were induced through Defendants' false pretenses to enter fraudulent, misleading and deceptive sales and financing agreements with the Defendants to purchase cosmetic medical devices.

2.      This class action arises from Defendants' fraudulent, deceptive and exploitative marketing and sales practices in the medical aesthetics industry, a highly unregulated market. The medical aesthetics industry has grown exponentially in recent years, with aesthetic medical device manufacturers aggressively marketing their products to physicians, med spa owners, and other healthcare professionals as lucrative revenue-generating tools.

3.      Defendants marketed these devices as profitable devices promising high revenues, that came with marketing and advertising support to purchasers that would generate leads, but failed to provide such support.

4.      Defendant BTL facilitated financing through third party lenders, including Defendants MMP, DEXT, TIMEPAYMENT, NORTH MILL, and AMUR, inducing Plaintiffs through false pretenses to enter high-interest financing agreements amassing hundreds of thousands of dollars of debt.

/ / /

5.    Defendants lure doctors, nurses, and medical spa owners into financing their cosmetic medical devices by "wining and dining" them at extravagant sales conferences, over-inflating, or blatantly misrepresenting potential sales projections for treatments they can then sell to their clients.

6.    Defendant BTL promised post-purchase marketing support to drive sales to Plaintiffs' businesses, including business-tailored billboard advertisements, promotional videos, online advertising, and sales referrals. The support that was actually provided, however, fell far short of what Defendant BTL had promised.

7.    In March 2025, BTL boasted of becoming the "fastest-growing non-invasive facial lifting procedure" when its EMFACE treatment surpassed one million treatments administered in just two years.[1]

8.    Defendant BTL's growth in four short years is marked, with upwards of 3,000 employees, 500+ engineers and a presence in over 80 countries. This growth hinges in large part on Defendant BTL convincing small business owners of boutique clinics, or medical spas, like Plaintiffs to often finance six figure, high-interest loans to purchase devices EMFACE, EMSCULPT NEO, EMSELLA, and others.

9.    Defendant BTL maintains an aggressive marketing and sales campaign including extravagant luxury trips all over the world, targeted toward Plaintiffs and those similarly situated.

10.    Defendant BTL intentionally communicated and agreed to "terms of the agreement," exclusively verbally, refusing to document commitments in emails or other writings.

11.    Like these other questionable and unlawful business practices, Defendant BTL's fraudulent, misleading and deceptive sales practices allow it to take

---

[1]    https://www.prnewswire.com/news-releases/btls-emface-surpasses-1-million-treatments-becoming-the-fastest-growing-non-invasive-facial-lifting-procedure-302390226.html?utm_

advantage of practitioners who, after being fraudulently induced by Defendants to purchase BTL devices, become burdened with crippling, business-shuttering debt.

12.    Plaintiffs thus bring this action pursuant to: (i) California's Business & Professions Code §§ 17200, *et seq.* (the Unfair Competition Law or "UCL"); (ii) California's Business and Professions Code §§ 17500, *et seq.* (the False Advertising Law or "FAL"); (iii) California's Business & Professions Code §§ 16700, *et seq.* (the Cartwright Act), and common law claims described herein. Plaintiffs bring this action on behalf of a nationwide class and a California subclass for damages, restitution, and injunctive relief, and any other relief deemed appropriate by the court to which this case is assigned.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d), as there is minimal diversity, there are over 100 class members, and the amount in controversy exceeds the sum of $5 million, exclusive of interest and costs.

14.    This Court has personal jurisdiction over Defendants because Defendants are corporations, limited liability companies, or other business entities authorized to conduct and do conduct business in the State of California. Defendants conduct sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market through their promotion, sales, distribution, marketing, and financing within this State to render the exercise of jurisdiction by this Court permissible.

15.    Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants transact substantial business in this District. A substantial part of the events giving rise to Plaintiffs' claims arose here.

## PARTIES

16.    Plaintiff Nicole King, at all times mentioned herein was an individual citizen of the State of California and resident of Los Angeles County. Plaintiff Cosmo

Contour & Spa LLC, at all times mentioned herein, was a California Limited Liability Company with its principal place of business in Los Angeles County, and was owned by Plaintiff Nicole King. On or about November, 2021, Plaintiff Nicole King, through Plaintiff Cosmo Contour & Spa LLC, purchased BTL's "Emsculpt Neo" device, with an equipment financing agreement through AMUR, and on or about October 2022, Plaintiff Nicole King, through Plaintiff Cosmo Contour & Spa LLC, purchased BTL's "Emface" device, with an equipment financing agreement through DEXT. Although Plaintiff Cosmo Contour & Spa LLC signed the purchase agreements, the purchase agreements required Plaintiff Nicole King to personally guarantee the agreements. Defendants induced these purchases through fraudulent, deceptive, and/or misleading statements, representations, and/or omissions.

17.    Plaintiff Jennifer Tabiza, at all times mentioned herein was an individual citizen of the State of California and resident of Los Angeles County. Plaintiff Jennifer Tabiza Optometrist, APC, at all times mentioned herein, was a California Professional Corporation, with its principal place of business in Los Angeles County, and was owned by Plaintiff Jennifer Tabiza. Between October 2022 and December 2022, Plaintiff Jennifer Tabiza, through Plaintiff Jennifer Tabiza Optometrist, APC, purchased BTL's "Emface," "Emsculpt Neo," "Emsella" and "Emtone" devices, with financing agreements through MMP for all devices except the Emsella, which was through TIMEPAYMENT. However, upon information and belief, MMP subsequently assigned the Emface financing agreement to DEXT, the Emsculpt Neo agreement to NORTH MILL, and the Emtone agreement to AMUR. Although it was Plaintiff Jennifer Tabiza Optometrist, APC that signed the purchase agreements, the purchase agreements required Plaintiff Jennifer Tabiza to personally guarantee the agreements. Defendants induced these purchases through fraudulent, deceptive, and/or misleading statements, representations, and/or omissions.

18.    Defendant BTL is a privately owned global manufacturer of medical and aesthetic equipment, namely Emsculpt Neo, Emface, Emsella, EmTone, Exion,

and ExoMind devices. BTL is incorporated under the laws of Delaware, with its principal place of business in Massachusetts with offices located at 362 Elm St, Ste #5, Marlborough, MA 01752 and thus is a citizen of Delaware and Massachusetts. BTL has engaged in business in the state of California by selling and delivering equipment to consumers throughout California, which it also does throughout the United States. BTL holds multiple U.S. patents covering its proprietary High-Intensity Focused Electromagnetic (HIFEM) technology, which is central to the Emsculpt Neo body-contouring device and other non-invasive body-shaping procedures. BTL has actively enforced its patent rights against competitors to protect its exclusive use of the patented technology. Although BTL's patents provide significant protection for its HIFEM technology, other companies may hold patents relating to alternative muscle-stimulation and body-contouring methods.

19.     Defendant MMP is a privately owned financial services company specializing in equipment financing and unsecured capital financing. MMP is incorporated under the laws of New York with an office located at 19 Engineers Lane, Farmingdale, New York 11735 and thus is a citizen of New York. MMP has engaged in business in the state of California by entering into equipment finance agreements with purchasers of BTL devices throughout California, which it also does throughout the United States.

20.     Defendant DEXT is a privately owned financial services company specializing in medical equipment financing. DEXT is organized under the laws of Delaware with an office located at 4000 Kruse Way Place, Building 3, Suite #100, Lake Oswego, Oregon 97035 and thus is a citizen of Oregon. DEXT has engaged in business in the state of California by entering into equipment finance agreements with purchasers of BTL devices throughout California, which it also does throughout the United States.

21.     Defendant AMUR is a privately owned financial services company specializing in equipment financing. AMUR is organized under the laws of Nebraska

with an office located at 304 W. 3rd Street, Grand Island, Nebraska 68801, and thus is a citizen of Nebraska. AMUR has engaged in business in the state of California by entering into equipment finance agreements with purchasers of BTL devices throughout California, which it also does throughout the United States.

22.     Defendant TIMEPAYMENT is a privately owned financial services company specializing in equipment financing.  TIMEPAYMENT is organized under the laws of Delaware with an office located at 200 Summit Drive, Suite #100, Burlington, MA 01803 and thus is a citizen of Massachusetts.  TIMEPAYMENT has engaged in business in the state of California by entering into equipment finance agreements with purchasers of BTL devices throughout California, which it also does throughout the United States.

23.     Defendant NORTH MILL is a Delaware association that engages in equipment financing.  NORTH MILL is organized under the laws of Delaware with an office located at 50 Washington Street, Suite 1211, South Norwalk, CT 06854 and thus is a citizen of Connecticut.  NORTH MILL has engaged in business in the state of California by entering into equipment finance agreements with purchasers of BTL devices throughout California, which it also does throughout the United States.

24.     Plaintiffs do not know the true names or capacities, whether individual, partner, or corporate, of the defendants sued herein as DOES 1 through 10, and for that reason, said defendants are sued under such fictitious names, and Plaintiffs will seek leave of this Court to amend this Complaint when such true names and capacities are discovered. Plaintiffs are informed and believe, and based thereon allege, that each of said fictitious defendants, whether individual, partner, or corporate, were responsible in some manner for the acts and omissions alleged herein, and proximately caused Plaintiffs to be subject to the unlawful practices, wrongs, injuries, and damages complained of herein.

25.     Plaintiffs are informed and believe, and thereon allege, that all Defendants, however designated whether by real or fictitious name, were and are in

1  some manner responsible for the events, happenings, occurrence and
2  instrumentalities upon and about which this action is made.

3       26.      Plaintiffs are further informed and believe, and thereon allege, that
4  each of the Defendants herein, whether designated by real or fictitious name, are, and
5  at all times relevant hereto, were, the agents of each of the co-Defendants, as well as
6  the agents of all Defendants, and in doing things and acts herein alleged and
7  complained of or in failing to that do that which they should have done, were acting
8  within the scope of that agency.  Defendants, and each of them, approved of,
9  condoned, and/or otherwise ratified each and every one of the acts or omissions
10  alleged herein.

11      27.      At all times mentioned herein, Defendants, and each of them, were
12  members of and engaged in a joint venture, partnership, and common enterprise, and
13  acting within the course and scope of and in pursuance of said joint venture,
14  partnership, and common enterprise.

15                          **FACTUAL ALLEGATIONS**

16      28.      Between November 2021 and December 2022 Plaintiffs collectively
17  purchased six different devices from BTL, with a total purchase price in excess of
18  $1.0 million dollars. Each of the six devices was financed through third-party
19  equipment financing companies exclusively arranged by BTL, including Defendants
20  MMP, DEXT, NORTH MILL, TIMEPAYMENT, and AMUR, and after including
21  the financing charges, the total commitment for the six devices collectively was
22  approximately $1.6 million dollars.

23      29.      BTL is a privately owned manufacturer of Medical and Aesthetic
24  Equipment with the sole patent in the United States for the Emsculpt Neo body-
25  contouring device and other non-invasive body-shaping devices and procedures,
26  including Emface, Emsella, and Emtone. The company actively restricts the
27  importation of products into the United States that infringe BTL's patents; thus, BTL
28  has a monopoly on these particular products in the United States.

30.     Defendant BTL, a major manufacturer of medical aesthetic devices, markets its devices as breakthrough technologies capable of generating substantial revenue for medical practices and spas. Its flagship products, including Emsculpt, Emface, Emsella, and Emtone, are promoted as offering revolutionary treatment options that will significantly enhance revenue streams through increased patient demand.

31.     Defendant BTL claims its devices are supported by extensive marketing assistance and guaranteed sales leads for purchasers, which are touted as essential components of the devices' profitability, in addition to territorial and price controls which are designed to regulate the supply and demand for the treatments.

32.     Manufacturers like Defendant BTL employ aggressive sales tactics designed to exploit potential customers. Medical professionals, including physicians and med spa owners with limited business experience are lured by Defendants' promises of high profitability, a protected market, and comprehensive marketing support that, in reality, are never delivered.

33.     The six-figure prices for these devices requires a large investment up front necessitating financing, purchase of equipment protection insurance, and accruing interest. The average med spa owner will invest in not just one device for one part of the body but several devices, sometimes amassing over half a million dollars in principal for financing in one agreement.

34.     Defendant BTL's sales strategy begins with broad marketing campaigns, promotional materials, and high-pressure in-person sales efforts. Sales representatives assure prospective customers that purchasing Defendant BTL's devices will result in substantial revenue increases for their businesses, and even promises of protecting their "corner on the market" in a particular geographic area, driven by Defendant BTL's purported marketing leads, advertising campaigns, and patient referrals. These promises are made repeatedly in presentations, promotional materials, and verbal assurances by Defendant's representatives.

35.    Defendant BTL purposefully misleads potential purchasers based on inflated, misleading and/or fabricated usage and sales data for the devices.

36.    One of the tactics BTL employs is to use paid sales representatives who also own and operate medspas featuring BTL devices, without disclosing that the individuals are paid salespeople. BTL then funnels significant resources including promotion and client referrals to the medspas owned by the paid sales representatives, and then uses these success stories to sell potential clients on the profitability of the BTL devices. However, in reality, the medspa owners being promoted as success stories by BTL are being significantly propped up by additional support from BTL, not provided to other device purchasers, and by the commissions that they earn from sales of new devices.

37.    BTL's paid sales representatives are also paid to speak at sales events and conferences hosted by BTL, where they present PowerPoint presentations created by BTL to promote the success of their spas without disclosing that they are being paid to promote BTL devices and that they will earn commissions on any devices sold at the sales events and conferences.

38.    During the sales process, Plaintiffs primarily communicated with BTL representatives Dean Boyle, Vincent Perri, and Louis Chambers, who were at the time BTL's Area Sales Manager, Area Sales Director, and Regional Sales Director, respectively, all responsible for the territory that included Los Angeles County.

39.    While BTL was attempting to persuade Plaintiffs into purchasing devices, its sales representatives made the same verbal representations to each of them: that BTL would provide substantial marketing and customer procurement support, and assured Plaintiffs that BTL possessed a substantial customer referral network that would be deployed for their benefit after purchase.

40.    For example, Dean Boyle verbally represented to Plaintiff Nicole King that BTL would provide a promotional billboard to promote her spa that was

1  never provided. Although the representation was made verbally, this promise was
2  referenced in a March 3, 2023 text message from Dean Boyle to Plaintiff Nicole King.

3      41.    BTL representatives also made numerous representations to Plaintiffs
4  that they would not be competing with other businesses utilizing BTL devices in their
5  immediate vicinity, and sold Plaintiffs on a highly-controlled marketplace that would
6  disallow competitors from undercutting them on pricing. However, these promises
7  now appear to have been completely false and in fact there were numerous business
8  competitors selling BTL treatments in Plaintiffs' direct geographic vicinities.

9      42.    For example, on approximately November 2021, Louis Chambers
10 verbally represented to Plaintiff Nicole King that the Emsculpt Neo device would be
11 sold only to a limited number of providers within her geographic area in order to
12 minimize direct competition. Similarly, on approximately October 2022 when the
13 Emface device was being launched, Louis Chambers verbally represented to Plaintiff
14 Nicole King that Cosmo Contour & Spa LLC had been selected as one of only five
15 providers in the geographic area to be given the opportunity to purchase the Emface
16 device. However, neither of these representations were ultimately true.

17     43.    Similarly, on September 21, 2022, Vincent Perri and Louis Chambers
18 met with Plaintiff Jennifer Tabiza, during which they verbally promised that BTL
19 would provide promotional billboards, client leads, and other marketing support if
20 she purchased BTL devices. During the meeting, Vincent Perri and Louis Chambers
21 also showed Plaintiff Jennifer Tabiza sales and revenue data, purportedly showing
22 how profitable the Emsella device had been for other providers. Plaintiff Jennifer
23 Tabiza now believes that this sales and revenue data was inflated and/or fabricated.

24     44.    BTL delivered on only a fraction of the post-purchase support it
25 promised, including failing to produce promotional billboards that were promised to
26 Plaintiffs, and failing to follow through on promises to promote Plaintiffs' businesses
27 in magazines. BTL also failed to deliver on its promises of customer referrals, which
28 were essentially non-existent.

45.     By agreeing to purchase BTL devices, Plaintiffs were required to comply with a "Minimum Advertised Price" ("MAP") policy. Under this arrangement, BTL mandates that providers, including Plaintiffs, may not advertise BTL treatments below a fixed price point—believed to be uniformly enforced across the U.S. market. These pricing controls are embedded directly in BTL's purchase agreements, automatically binding purchasers to the MAP terms upon acquisition of the equipment.

46.     BTL's MAP policy applies to all BTL device purchasers, and is used to artificially control downstream retail pricing.

47.     Under the MAP pricing system, purchasers are prohibited from advertising or promoting treatment sessions below a specified amount—e.g., $850 per session. This was billed as an advantage to Plaintiffs because it would apply to any competitors offering the same treatments, and would ensure that revenues remained commensurate with their projections. However, in practice, Plaintiffs found that the MAP rules appeared to be selectively enforced, and many competitors were selling the same or similar treatments at a fraction of the cost that BTL set in the MAP guidelines. These limitations significantly impaired Plaintiffs' ability to offer competitive pricing in their local market and restrict lawful price-based competition.

48.     In addition, continued operation of the devices is conditioned on the provider's purchase of costly proprietary consumables from BTL. Should a provider deviate from the MAP pricing—such as by advertising discounts—Defendant BTL enforces punitive measures, including doubling the cost of consumables, refusing to continue to supply consumables, and/or removing the provider from its online directory, which is marketed as essential for lead generation and patient visibility.

49.     BTL also misleads purchasers into believing they can exit the MAP scheme without jeopardizing their financial investment.

50.     Furthermore, the resale market for BTL devices is also highly regulated by BTL, further limiting Plaintiffs' ability to compete and maintain their

businesses. For example, any attempt to resell a BTL device triggers an undisclosed "recertification" or "transfer" fee—often in the tens of thousands of dollars. While this fee is vaguely referenced in the purchase agreement, its actual amount is omitted, constituting a material omission and an unfair restraint on exit rights.

51.    To further bind purchasers to its MAP pricing system, BTL maintains a continuing security interest in the devices, ensuring compliance with post-sale obligations and making resale or transfer of the devices exceedingly difficult. This mechanism effectively prevents buyers from recouping their investment, even when the devices fail to generate the promised return and undermines BTL's representations that it promotes a fair and open marketplace.

52.    Defendant BTL was solely responsible for procuring equipment financing agreements for its customers, including Plaintiffs, which were arranged with BTL-preferred equipment financing companies, including Defendants MMP, DEXT, NORTH MILL, TIMEPAYMENT and AMUR, without any input from the purchasers or disclosures to them.

53.    Defendant MMP also acted as a broker for equipment financing companies, and frequently caused purchasers to sign equipment financing agreements with MMP and then immediately sold or assigned the agreements to a different equipment financing company without notice to the purchasers or consent from them.

54.    All of Plaintiffs' financing documents were completed and submitted by BTL employees on Plaintiffs' behalf. Unbeknownst to Plaintiffs, the MMP Equipment Financing Agreement BTL used, which was single spaced and printed in very fine print, included the following personal guarantee:

> "In consideration of Creditor entering into the EFA, the undersigned, together and separately, unconditionally, personally and irrevocably guarantee to Creditor the prompt payment and performance of all Debtor's obligations now and/or hereafter owes to Creditor. You agree that this is a guaranty of

payment, not collection, and that Creditor can proceed directly against you without first proceeding against Debtor or the Collateral. You waive notice of acceptance, acceleration and default and all defenses, including protest, presentment and demand. Creditor may renew, extend or otherwise change the terms of the EFA without notice to you and you will be bound by such changes, and you will pay all of Creditor's costs of enforcement and collection, including reasonable attorneys' fees. This Guaranty is binding on your heirs, administrators, representatives, successors and assigns and survives the insolvency, bankruptcy or discharge from bankruptcy of Debtor."

55.     This personal guarantee was not disclosed or explained to Plaintiffs. Each of the equipment financing agreements used by Defendants DEXT, NORTH MILL, TIMEPAYMENT and AMUR contain substantially similar language.

56.     Defendant MMP also engaged in the practice of financing "split" transactions, which were used to induce third-party equipment financing companies to approve customer financing that the customer could not afford by splitting one transaction into two smaller transactions and simultaneously assigning them to two different equipment financing companies.

57.     For example, on September 20, 2022, Plaintiff Jennifer Tabiza Optometrist, APC signed two equipment financing agreements with MMP, for the Emface device and the Emsculpt Neo device, both of which carried an approximately $200,000 equipment price, not including financing charges. However, according to the UCC-1 forms filed with the California Secretary of State, MMP assigned the Emface contract to DEXT on September 26, 2022 and assigned the Emsculpt Neo contract to North Mill Credit Trust on September 29, 2022. Upon information and belief, this "split" transaction was facilitated by MMP because neither DEXT nor NORTH MILL would have approved Tabiza for the combined transaction, nor would they have approved Tabiza for either individual transaction had they known of the other transaction. But by assigning them to two different equipment financing

companies within a short period of time, the "split" transaction was undetectable by DEXT and NORTH MILL at the time that they accepted the assignments. The existence of this practice by MMP underlines the fact that MMP knew that BTL and MMP were inducing Plaintiffs and other similarly situated individuals and businesses to enter into financing arrangements that were likely to result in default.

58.    In some instances, the second device is represented to the purchaser as a "free gift" when in reality MMP needs it in order to facilitate a prohibited "split" financing transaction.

59.    The financing arrangements are made without full disclosure to the purchasers of the risks and without adequately explaining that Defendant BTL's promised marketing support is either non-existent or ineffective. Instead, purchasers are left with significant debt obligations and minimal means to generate revenue to cover their costs. Defendant BTL's failure to disclose these material facts constitutes fraudulent concealment and deception.

60.    Additionally, Defendants have aggressively enforced the equipment financing agreements against Plaintiffs and other similarly situated individuals and businesses, including Defendants DEXT and AMUR suing Plaintiff Nicole King for the full value of the equipment financing agreements, without any offsets, despite the fact that Plaintiff Nicole King voluntarily returned her BTL devices months ago.

## CLASS ACTION ALLEGATIONS

61.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of themselves and all other similarly situated individuals, defined as follows:

> **Nationwide Class:** All persons and entities in the United States who entered into sales agreements with BTL Industries, Inc. for the purchase of one or more aesthetic medical devices, including components of said devices, and obtained financing through one of BTL's lenders, from the period of four years prior to the filing of this action to the present (the "Class Period").

62.    In the alternative, Plaintiffs bring this action individually and on behalf of the following proposed State Classes of similarly situated persons defined as follows:

> **California Class:** All persons and entities in California who entered into sales agreements with BTL Industries, Inc. for the purchase of one or more aesthetic medical devices, including components of said devices, and obtained financing through one of BTL's lenders, from the period of four years prior to the filing of this action to the present.[2]

63.    Excluded from the Class are Defendants, as well as their officers, directors, or employees; officers, directors, or employees of any entity in which Defendants currently have or has had a controlling interest; and Defendants' legal representatives, heirs, successors, and assigns.

64.    Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

65.    The Class members are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe that the proposed Class contains hundreds of individuals and/or businesses who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this time.

66.    Each member of the proposed Class herein has been exposed to and relied upon Defendants' false and/or misleading sales and marketing tactics.  The sales of each device by Defendants to Class Members throughout the Class Period has resulted from Defendant BTL's sales representatives and marketing materials falsely promising that purchases of Defendant BTL's devices would include sales leads and marketing support to increase treatment sales. Defendant BTL's deceptive

---

[2] The Nationwide Class and the California Class are collectively referred to as the "Class".

practices also included imposing price-fixing requirements, which prevented Class Members from competitively selling treatments to generate revenue to pay off high interest financing agreements entered into based on Defendants' misrepresentations. Each Class Member was deceived and induced into entering equipment financing agreements with the financer for their purchase transaction, including Defendants MMP, DEXT, TIMEPAYMENT, NORTH MILL, and AMUR with no disclosure to them of the financers' relationship to BTL and no knowledge that the financing approval was made possible through Defendants' fraud.

67.     Common questions of law and/or fact exist in this case with respect to the proposed Class, which predominate over any questions affecting individual members of the Class. The common questions of law and/or fact include, but are not limited to, the following:

(a)   Whether, during the Class Period, Defendants used false representations and/or falsely advertised marketing and sales generation support to induce Class Members into purchasing equipment;

(b)   Whether the Class Members' contracts are vitiated by Defendants' fraudulent conduct;

(c)   Whether Defendants intentionally misrepresented material facts to Class Members to induce Class Members to purchase one or more device(s);

(d)   Whether the Class Members relied on these misrepresentations;

(e)   Whether Defendants negligently provided false information to the Class Members;

(f)   Whether Class Members have suffered financial losses due to Defendants' misrepresentation;

/ / /

/ / /

(g)     Whether, during the Class Period, Defendants engaged in monopolistic practices by controlling the market for medical and aesthetic equipment;

(h)     Whether Defendants' actions violate California's antitrust laws, including without limitation the Cartwright Act;

(i)     Whether Defendants assumed a fiduciary duty by controlling the financing process for Class Members;

(j)     Whether Defendants breached their fiduciary duties by prioritizing their interests over those of the Class Members;

(k)     Whether Defendants breached the terms of the equipment/device(s) sales contracts with the Class Members;

(l)     Whether a failure of consideration entitles Class Members to rescind the contracts;

(m)    Whether Defendants' use of the misleading, false and deceptive sales and marketing scheme described herein constituted false advertising under California law;

(n)     Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under California law;

(o)     Whether Plaintiffs and Class members are entitled to damages and/or restitution and the proper measure of such losses;

(p)     Whether Defendants continue to use false, misleading, and/or illegal price fixing such that an injunction is necessary.

(q)     Whether Plaintiffs and Class members will suffer irreparable harm should they be required to continue making payments under the terms of the equipment financing agreements.

68.     Plaintiffs' claims are typical of the claims of the Class Members because Plaintiffs, like all Class Members, were deceived by Defendants' false and deceptive sales trajectories, promised marketing and sales support and post-purchase

1   price fixing, and were subject to Defendants' equipment financing agreements, as

2   alleged herein, in a typical consumer setting and sustained damages from Defendants'

3   wrongful conduct.

4         69.     Plaintiffs will adequately protect the interests of the Class and have

5   retained counsel who are experienced in litigating complex class actions. Plaintiffs

6   have no interests that conflict with those of the Class.

7         70.     A class action is superior to other available methods for the fair and

8   efficient adjudication of this controversy.

9         71.     The prerequisites to maintaining a class action for injunctive or

10   equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendants have acted

11   or refused to act on grounds that apply generally to the Class so that final injunctive

12   relief or corresponding declaratory relief is appropriate with respect to the Class as a

13   whole.

14         72.     Defendants' conduct is generally applicable to the Class as a whole

15   and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.

16   As such, Defendants' systematic practices make declaratory relief with respect to the

17   Class as a whole appropriate.

18         73.     The requirements of Fed. R. Civ. P. 23(b)(3) are met as common

19   issues predominate over any individual issues, and treatment of this matter as a class

20   action is superior to numerous individual actions.

21         74.     The litigation of separate actions by Class Members would create a

22   substantial risk of inconsistent of varying verdicts or adjudications with respect to the

23   individual Class Members against Defendants herein; and which would establish

24   potentially incompatible standards of conduct for Defendants; and/or legal

25   determinations with respect to individual Class Members which would, as a practical

26   matter, be dispositive of the interests of the other Class Members not parties to

27   adjudications or which would substantially impair or impede the ability of the Class

28   Members to protect their interests.

# FIRST CAUSE OF ACTION

## Breach of Fiduciary Duty

*(Against All Defendants)*

75.     BTL voluntarily sent Plaintiffs' applications to specific lenders, MMP, DEXT, TIMEPAYMENT, NORTH MILL, and AMUR thus taking control of the purchase financing and inducing Plaintiffs to enter into onerous and unconscionable contractual terms.  This voluntary act placed BTL and the financing Defendants, in a fiduciary relationship with Plaintiffs, acting as the more qualified and experienced contracting entities, advising Plaintiffs on financing, submitting their applications to hand-picked lenders BTL chose, with high interest rates and strict terms, all the while Plaintiffs believed that BTL and the financing Defendants were helping them through the process.

76.     As fiduciaries, Defendants were legally bound to put the buyer's best interests ahead of their own by knowingly accepting a duty on behalf of another.  Defendants were required, as fiduciaries, to act as prudent persons in the buyer's best interest but did not.

77.     Acting for both the buyer and the seller, BTL and the financing Defendants created a conflict of interest, arranging loans for the buyer, using expertise in conducting loan closings, benefiting BTL with significant sales that it knew or should have known would ultimately harm a buyer, thereby breaching the fiduciary duty to Plaintiffs and the putative Class Members, causing them damage.

78.     The loan contracts at issue were contracts of adhesion, drafted in favor of the lenders and seller, with a company that had a monopoly on the products, and contained non-negotiable terms.  For example, one such Equipment Financing Agreement contains a clause stating:

> Creditor may renew, extend or otherwise change the terms of the EFA without notice to you and you will be bound by such changes, and you will pay all of Creditor's costs of enforcement and collection, including [reasonable] attorneys' fees. This Guaranty is binding on your heirs,

administrators, representatives, successors and/or assigns and survives the insolvency, bankruptcy or discharge from bankruptcy of the Debtor.

79.    Additional provisions within the contract, undisclosed to Plaintiffs, included a requirement that the buyer MUST charge BTL's suggested retail price for services/treatments on the purchased equipment or the equipment warranty would be terminated. Thus, BTL engaged in price fixing, controlling the price the buyer could charge for services in using the equipment.

80.    Due to the above, Defendants, their employees, agents, and assigns, breached their fiduciary duties owed to Plaintiffs.

## SECOND CAUSE OF ACTION

### Fraud and Fraudulent Deceit

*(Against All Defendants)*

81.    Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

82.    Under Cal. Civ. Code § 1567, fraud is a ground for defeating claims of contractual consent, including instances where a party is induced to enter into agreements under false pretenses. As established in *Rattagan v. Uber Technologies*, Inc., 17 Cal.5th 1 (2024), fraud vitiates any consent that might have been obtained when deceptive practices influence a party's decision to enter a contractual agreement.

83.    Cal. Civ. Code § 1572 defines "actual fraud" as including "the suppression of that which is true, by one having knowledge or belief of the fact." Defendants' conduct involved the intentional suppression of material facts and the making of false representations intended to mislead Plaintiffs and Class Members.

84.    Additionally, Cal. Civ. Code § 1709 provides that "fraudulent deceit" is actionable as a tort, while § 1710 defines deceit to include "the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are

likely to mislead for want of communication of that fact." Defendants' actions constituted fraudulent deceit within the meaning of these provisions.

85.    BTL, MMP, DEXT, NORTH MILL, TIMEPAYMENT and AMUR, including their employees, agents, and assigns, engaged in fraudulent conduct by:

- Misrepresenting or omitting essential details of the financing arrangements offered to Plaintiffs and Class Members;

- Misleading Plaintiffs about the beneficial effects the purchase of Defendant's devices would have on their businesses, including unrealistic revenue projections;

- Assuming control over the financing process without adequately informing Plaintiffs of their right to seek alternate financing options;

- Fraudulently altering financial documents in order to obtain approval for high loan amounts, including falsifying credit reports;

- Issuing loans based on non-existent and/or falsified valuations of loan collateral;

- Concealing loan collateral from Plaintiffs and Class Members to achieve financing approval;

- Failing to advise Plaintiffs of their right to pursue alternate financing, thereby coercing them into Defendants' preferred financing agreements;

- Making ancillary agreements and promises as incentives to purchase devices, which were subsequently not honored;

- Voluntarily filing applications for financing with MMP, DEXT, TIMEPAYMENT, NORTH MILL, and AMUR limiting Plaintiffs' ability to independently choose suitable financing options.

86.    Defendants' fraudulent conduct was undertaken with the intent to obtain an unjust advantage by inducing Plaintiffs and Class Members to purchase devices and enter into high-interest financing agreements under false pretenses.

87.     Plaintiffs and Class Members justifiably relied on Defendants' misrepresentations and omissions in deciding to purchase the devices and enter into financing agreements. Had Plaintiffs and Class Members been informed of the true nature of the financing arrangements and the realistic potential for revenue generation from purchasing the devices, they would not have entered into the agreements.

88.     As a result of Defendants' fraudulent conduct, Plaintiffs and the Class Members have suffered substantial financial harm, both paying out of pocket on high interest loans, experiencing unrealized business opportunities, entering bankruptcy, and will continue to suffer harm. By the same token, as a result of these same practices, Defendants have unfairly reaped substantial gains in sky-rocketing device sales continued growth in market they monopolize.

## **THIRD CAUSE OF ACTION**

### **Fraudulent Concealment or Omission**

### *(Against All Defendants)*

89.     Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

90.     Defendants, acting through their sales representatives, agents, loan officers, and marketing channels, knowingly and willfully concealed or omitted material facts regarding the actual revenue potential of BTL's devices and the availability of promised marketing and advertising support.

91.     Rather than disclose the truth about the devices' profitability and lack of promised support, Defendants actively promoted the devices with false representations to induce Plaintiffs and the Class to purchase the devices and enter into high-interest financing agreements.

92.     Defendants' concealment and omissions were material because they directly impacted Plaintiffs' and the Class Members' decisions to purchase the devices and commit to financing agreements based on false promises.

/ / /

93.    Plaintiffs and the Class reasonably relied on Defendants' partial representations and omissions, believing that the devices would generate sufficient revenue through marketing support and advertising leads as promised by Defendant so as to render the purchases sound business decisions.

94.    As a direct and proximate result of Defendants' fraudulent concealment and omissions, Plaintiffs and the putative Class have suffered substantial damages, including financial losses due to their inability to generate revenue sufficient to satisfy the high-interest financing agreements.

95.    Defendants' conduct was malicious, oppressive, and carried out with willful and reckless disregard for the rights and financial well-being of Plaintiffs and the Class.

96.    Plaintiffs and the Class are entitled to compensatory damages, punitive damages, attorneys' fees, costs, and all other relief the Court deems proper.

## FOURTH CAUSE OF ACTION

### Violation of California's Antitrust Law

### California Business & Professions Code §§ 16700 – 16770

### *(Against All Defendants)*

97.    Plaintiffs repeat and reallege each of the foregoing allegations, as though fully set forth herein.

98.    The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 - 16770, prohibits agreements, combinations, or conspiracies to restrain trade or engage in unfair methods of competition.

99.    BTL has engaged in unlawful restraints of trade through its conduct, including, but not limited to:

- BTL possesses monopoly power as the sole patentee and exclusive distributor in a clearly defined economic and geographic market and proved its intent to maintain that power with lawsuits against companies attempting to sell like equipment in the United States.

- BTL manipulated financial contracts and resources of customers unrelated to the patent, in order to obtain an advantage that was not just being the sole vendor of the product.

- BTL asserted significant pressure on purchasers during sales pitches, ran credit reports without consent, and obtained loan approval all within a single sales pitch, thereby asserting undue influence over the terms of the agreement and inducing Class Members to assent to the one-sided terms.

- BTL controls the product prices and/or excludes competition in the United States market. By requiring purchasers of its devices to adhere to minimum pricing agreements, BTL thereby prevents Class Members from selling treatments at competitive prices.

- BTL utilized deceptive advertising practices to induce Class Members to enter high-interest financing agreements, while simultaneously imposing price-fixing requirements that restricted their ability to profit from the use of Defendant BTL's devices.

- Engaging in coercive marketing practices designed to prevent fair competition in the marketplace for aesthetic medical devices.

- BTL used its power as sole producer of the Emsculpt line of devices to threaten Plaintiffs and Class Members with being cut-off from future purchases of consumable products necessary to the function of the devices, such as auxiliary "paddles" and applicators used to administer treatments.

- Defendant BTL's conduct constitutes a conspiracy or agreement that unreasonably restrains trade and undermines free competition in violation of the Cartwright Act.

100.   Plaintiffs detrimentally relied upon BTL, its employees, agents, and assigns, and its selected lenders when BTL induced them to purchase equipment that it knew Plaintiffs would be unable to pay for, and the chosen lenders provided the

loans. Plaintiffs paid duplicative fees and charges to multiple lenders and signed contracts of adhesion, causing irreparable damage to Plaintiffs.

101.   BTL claimed Plaintiffs would obtain thousands of dollars in sales, completed their loan applications, which made them privy to their lack of financial ability to obtain loans in the amounts necessary to purchase BTL products and therefore knew they could not repay the loans. Plaintiffs were induced to sign financial contracts that BTL knew were beyond Plaintiffs' legal understanding ability to pay, which caused Plaintiffs substantial harm and damages. Specifically, all Plaintiffs have been subject to monthly payments toward the devices in the range of three to ten thousand dollars, inability to sell treatments at a profit because of BTL's artificial price fixing that is out of sync with the market, and emotional and financial distress due to notices sent by Defendants threatening legal action for selling treatments below MAP pricing and failing to fully pay loan obligations.

102.   As a result of Defendants' fraudulent conduct, Plaintiffs and the Class Members have suffered substantial financial harm, both paying out of pocket on high interest loans and experiencing unrealized business opportunities and will continue to suffer harm.

## FIFTH CAUSE OF ACTION

### Fraudulent/Intentional Misrepresentation

*(Against All Defendants)*

103.   Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

104.   Plaintiffs bring this claim individually and on behalf of the Class under California law.

105.   Defendant BTL falsely represented to Plaintiffs and the Class that they would receive a dramatic increase in revenue and promised sales and advertising support by purchasing its products to use to conduct treatments on their clients.

/ / /

106.   Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase the Products.

107.   Defendants knew or should have known that their representations about the products were false in that BTL artificially inflated projected sales revenues and competitive pricing is restricted when prices are fixed and not competitive as described throughout.   Defendant BTL knowingly allowed its sales reps, and marketing materials to intentionally mislead customers, such as Plaintiffs, by promising post-purchase support and sales leads, promotional materials, and that Plaintiffs would be the only purchasers within their geographic vicinity, with no intent to follow through. Defendants MMP, DEXT, TIMEPAYMENT, NORTH MILL, and AMUR knew or should have known that BTL was supplying them with falsified or otherwise grossly inaccurate data and financial documents in order to secure loans for Plaintiffs and the Class Members. Defendants MMP, DEXT, TIMEPAYMENT, NORTH MILL, and AMUR also knew or should have known that the terms of these loans were materially misrepresented to Plaintiffs at the time they were signed.

108.   Plaintiffs did in fact rely on these misrepresentations and purchased the products to their detriment. Given the deceptive manner in which Defendants advertised, marketed, represented and otherwise promoted the Products, Plaintiffs' and the Class's reliance on Defendants misrepresentations was justifiable.

109.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased products by entering high interest financing agreements in the hundreds of thousands of dollars and are unable to use the products due to enforced non-competitive pricing.

110.   Plaintiffs and the Class seek actual damages, attorney's fees, costs, and other such relief the Court deems proper.

/ / /

/ / /

# SIXTH CAUSE OF ACTION

## Negligent Misrepresentation

### *(Against All Defendants)*

111.   Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

112.   Defendants owed duties to Plaintiffs and the Class to exercise reasonable care in, marketing, advertising, selling, providing information regarding the devices, including revenue potential, marketing support, profitability of the devices, and procuring loans that Plaintiffs and the Class were financially qualified to receive.

113.   Defendants breached their duties to Plaintiffs and the Class by negligently providing false and misleading information including misrepresentations about the revenue potential of Defendants' products; false promises of marketing support, advertising materials, and sales referrals that were never provided; and inducing the Plaintiffs and the Class to enter high-interest agreements under misleading pretenses.

114.   Defendants knew or should have known that the representations made were false, inaccurate, or misleading, and that Plaintiffs and the Class would reasonably rely on such representations when purchasing the products and signing finance agreements.

115.   As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs and the Class have suffered actual damages including financial losses resulting from their inability to generate revenue sufficient to satisfy the high-interest finance agreements.

116.   Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other such relief the Court deems proper.

/ / /

/ / /

/ / /

## SEVENTH CAUSE OF ACTION

### Breach of Contract and Failure of Consideration

*(Against All Defendants)*

117.   Based upon the foregoing facts, Defendants breached the equipment sale contracts and equipment loan contracts and as a result there was failure of consideration entitling Plaintiffs to have the contracts rescinded.

118.   The equipment financing agreements entered into between Plaintiffs and Defendants contain terms rendering the contracts illusory and thus lacking consideration. For example, one such agreement contains the provision: "Creditor may renew, extend or otherwise change the terms of the EFA without notice to you and you will be bound by such changes, and you will pay all of Creditor's costs of enforcement and collection, including [reasonable] attorneys' fees." Because only one party is bound by the terms of the contract, and those terms may be altered unilaterally by the other party, there is insufficient consideration to render the Equipment Financing Agreements enforceable.

## EIGHTH CAUSE OF ACTION

### Violation of California's Unfair Competition Law ("UCL")

### California Business and Professions Code § 17200, *et seq.*

*(Against All Defendants)*

119.   Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

120.   Defendants' conduct described herein violates each of the three prongs of the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code § 17200, *et seq.*, as it constitutes unlawful, unfair, and fraudulent conduct under each of the statute's three independent liability theories.

121.   The UCL prohibits, and provides civil remedies for, "unfair competition". Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that

1  purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping

2  language.

3      122.  By defining unfair competition to include "any unlawful, unfair or

4  fraudulent business act or practice," the UCL permits violations of other laws to be

5  treated as unfair competition that is independently actionable and sweeps within its

6  scope acts and practices not specifically proscribed by any other law.

7      123.  The UCL imposes strict liability. Plaintiffs need not prove that

8  Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent

9  business practices—but only that such practices occurred.

10     124.  A business act or practice is "unfair" under the UCL if it offends an

11 established public policy or is immoral, unethical, oppressive, unscrupulous, or

12 substantially injurious to consumers, and that unfairness is determined by weighing

13 the reasons, justifications, and motives of the practice against the gravity of the harm

14 to the alleged victims.

15 ***"Unfair Prong"***

16     125.  Defendants committed unfair business practices in violation of the UCL

17 in the following respects, among others:

18     •  Defendants engaged in misleading and deceptive sales tactics that

19        represented unrealistic revenue potential and failed to deliver the

20        promised post-purchase support including advertising and sales

21        referrals.

22     •  Defendant BTL's sales representatives promoted the purchase of

23        BTL's devices by suggesting that such purchases would lead to a

24        dramatic increase in revenue streams. These unrealistic projections

25        resulted in Plaintiffs swiftly amassing large amounts of debt and

26        entering financing agreements that were impossible to break.

27     •  Defendants imposed price fixing requirements on Plaintiffs,

28        preventing them from offering treatments at competitive prices.

1    Defendants' practices were immoral, unethical, oppressive, and
2    substantially injurious to consumers.

3    126.  The harm to Plaintiffs and Class Members outweighs the utility of
4    Defendants' practices. There were reasonably available alternatives to further
5    Defendants' legitimate business interests other than the misleading and deceptive
6    conduct described herein.

7    **"Fraudulent" Prong**

8    127.  A business act or practice is "fraudulent" under the UCL if it is
9    likely to deceive members of the consuming public.

10   128.  Defendants' acts and practices alleged above constitute fraudulent
11   business acts or practices as they have deceived Plaintiffs and are highly likely to
12   deceive members of the consuming public. Plaintiffs relied on Defendants'
13   fraudulent and deceptive representations through the sales representatives, website,
14   sales conferences, and verbal commitments.

15   129.  Such representations included unrealistic earnings potential based upon
16   inflated or completely false sales data, unfulfilled promises of sales generation, and
17   promised advertising and marketing support for products which Defendant BTL sells
18   which were never provided. These misrepresentations played a substantial role in
19   Plaintiffs' decision to purchase those products often resulting in the purchase of
20   multiple devices at once.

21   130.  Plaintiffs would not have purchased those products without Defendants'
22   misrepresentations.

23   **"Unlawful" Prong**

24   131.  A business act or practice is "unlawful" under the UCL if it violates any
25   other law or regulation.

26   132.  Defendants' deceptive business practices violated numerous other laws,
27   such as statutory laws, Cal. Bus. & Prof. Code § 17500 and common law principles
28   related to fraud, contract law, and unfair competition, as set forth herein.

133.    As a result of BTL's violations of the FAL, and other laws, Plaintiffs and the Class Members have each lost substantial sums of revenue and are paying out of pocket on high interest loans and will continue to suffer harm. By the same token, as a result of these same practices, BTL has unfairly reaped substantial gains in sky-rocketing device sales and continued growth in the market they monopolize fueled by unlawful misrepresentations.

134.    Defendants' practices, as set forth above, have misled Plaintiffs, and the proposed Class, in the past and will continue to mislead in the future. Consequently, Defendants' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

135.    Pursuant to the UCL, Plaintiffs and the Class are entitled to disgorgement and restitution of all of Defendants' revenues associated with their unfair competition, or such portion of those revenues as the Court may find equitable.

136.    Because Defendants continue to deceive current and prospective customers, public injunctive relief under the UCL is also necessary.

## NINTH CAUSE OF ACTION

### Violation of California's False Advertising Law ("FAL")

### California Business & Professions Code § 17500, *et seq.*

*(Against All Defendants)*

137.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

138.    Defendant BTL's conduct described herein violates California's False Advertising Law (the "FAL"), codified at California Business and Professions Code section 17200, et seq.

139.    The FAL provides in pertinent part, that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof . . . to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause

1   to be made or disseminated before the public in this state, or to make or disseminate

2   or cause to be made or disseminated from this state before the public in any state, in

3   any newspaper or other publication, or any advertising device, or by public outcry or

4   proclamation, or in any other manner or means whatever, including over the Internet,

5   any statement, concerning . . . those services, professional or otherwise, or concerning

6   any circumstance or matter of fact connected with the proposed performance or

7   disposition thereof, which is untrue or misleading, and which known, or which by the

8   exercise of reasonable care should be known, to be untrue or misleading, or for any

9   person, firm, or corporation to so make or disseminate or cause to be so made or

10  disseminated any such statement as part of a plan or scheme with the intent not to sell

11  . . . those services, professional or otherwise, so advertised at the price stated therein,

12  or as so advertised…"

13  140.   Like the UCL, the FAL expressly provides for injunctive relief, and also

14  contains provisions denoting its public purpose. A claim for injunctive relief under

15  the FAL is brought by Plaintiffs acting in the capacity of a private attorney general.

16  Although the private litigant controls the litigation of an FAL claim, the private

17  litigant is not entitled to recover compensatory damages for his own benefit, but only

18  disgorgement of profits made by the Defendants through untrue or misleading

19  advertising in violation of the statutory scheme or restitution to victims of the untrue

20  or misleading advertising.

21  141.   Defendants engaged in untrue and/or misleading advertising practices in

22  violation of the FAL in the following respects, among others:

23  • Defendant BTL engaged in misleading and deceptive sales tactics that

24     represented unrealistic revenue potential and failed to deliver the

25     promised post-purchase support including advertising and sales

26     referrals.

27  • Defendant BTL's sales representatives promoted the purchase of

28     BTL's devices by suggesting that such purchases would lead to a

"dramatic increase in revenue streams". These unrealistic projections resulted in Plaintiffs swiftly amassing large amounts of debt and entering financing agreements that were impossible to break.

- Defendants imposed price fixing requirements on Plaintiffs, preventing them from offering treatments at a competitive price. Defendants practices were immoral, unethical, oppressive, and substantially injurious to consumers.

142. BTL disseminated these misleading statements through various channels, including sales representatives, promotional materials, sales conferences, and marketing campaigns.

143. The harm to Plaintiffs and the Class Members arising from BTL's untrue and/or misleading advertising practices relating to the earning potential and BTL's advertising, sales, and marketing support to be included in the purchase of its devices outweighs the utility, if any, of those practices.

144. Plaintiffs and Class Members relied on BTL's misrepresentations when deciding to purchase BTL's devices over its competitors and how many devices to purchase, entering into high-interest financing agreements for hundreds of thousands of dollars. No rational person would assume this level of debt at high interest rates absent BTL's wrongful conduct.

145. BTL's untrue and/or misleading advertising practices relating to the earning potential and BTL's advertising, sales, and marketing support to be included in the purchase of its devices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/ or substantially injurious to Plaintiffs and the Class Members.

146. As a result of Defendants' violations of the FAL, Plaintiffs and the Class Members have each lost substantial sums of revenue and are paying out of pocket on high interest loans and will continue to suffer harm. By the same token, as a result of these same practices, Defendants have unfairly reaped substantial gains with sky-

1  rocketing BTL device sales and substantial growth in the market they monopolize.

2  147.  Because Defendants continue to deceive current and prospective

3  customers, public injunctive relief under the FAL is also necessary.

4  **TENTH CAUSE OF ACTION**

5  **Monopoly in Violation of California Law**

6  *(Against All Defendants)*

7  148.  Plaintiffs repeat and reallege each of the foregoing allegations, as

8  though fully set forth herein.

9  149.  BTL has willfully acquired and maintained monopoly power in the

10  market for non-invasive body-contouring and aesthetic medical devices in violation

11  of California's Cartwright Act (Bus. & Prof. Code §§ 16700–16770), as well as

12  California common law.

13  150.  BTL holds the sole patent rights to its Emface and Emsculpt series

14  devices and uses this market dominance to eliminate or severely restrict competition

15  by: (a) blocking the importation of competing devices; (b) enforcing RPM and MAP

16  agreements that suppress price competition among providers; and (c) leveraging its

17  sales and financing structures to prevent small business purchasers from seeking

18  alternative vendors.

19  151.  BTL further entrenches its monopoly by requiring providers to

20  purchase proprietary consumables and enforcing punitive penalties for non-

21  compliance, effectively eliminating aftermarket competition.

22  152.  BTL's monopoly conduct is not merely based on the patent itself, but

23  on its use of the patent as a lever to extend control over downstream pricing,

24  financing, and resale markets, thereby harming both competition and consumers.

25  153.  Plaintiffs and Class Members, direct purchasers, and users of BTL's

26  devices, have suffered financial harm because of BTL's monopolistic practices,

27  including inflated prices, foreclosure of alternative products, and anti-competitive

28  contractual constraints.

1    154.    BTL's conduct constitutes unlawful monopolization under the
2  Cartwright Act and California common law. Plaintiffs and Class Members seek
3  treble damages pursuant to Cal. Bus. & Prof. Code § 16750(a), injunctive relief,
4  attorneys' fees, and any other relief deemed appropriate by the Court.

5                    **ELEVENTH CAUSE OF ACTION**
6                              **Recission**
7                    **California Civil Code § 1689**
8                      *(Against All Defendants)*

9    155.    Plaintiffs repeat and re-allege the allegations contained in every
10 preceding paragraph as if fully set forth herein.

11    156.    BTL, through its sales representatives, made false representations to
12 Plaintiffs and Class Members, including that they would not be competing with any
13 other BTL devices in their geographic vicinity, that other competitors would not be
14 able to undercut them on pricing, and that they could expect revenues from the BTL
15 devices to significantly outpace their cost.

16    157.    These projections were made without basis and were known by BTL
17 to be false.

18    158.    BTL also falsely stated that Plaintiffs and Class Members would
19 receive valuable post-purchase support, and that BTL would actively refer clients to
20 their Medspas.

21    159.    Plaintiffs and Class Members relied on these representations and
22 were induced to sign purchase contracts totaling in the hundreds of thousands of
23 dollars, believing they would receive support and income sufficient to justify the
24 investment.

25    160.    BTL's misrepresentations were intentional, reckless, and made with
26 the purpose of inducing Plaintiffs' and Class Members' reliance. As a direct result,
27 Plaintiffs and Class Members suffered damages including financial distress, unpaid
28 debt, credit harm, and lost business.

1    161.    Plaintiffs and Class Members seek recission of the alleged contracts
2 in addition to compensatory and punitive damages, attorneys' fees, and any further
3 relief deemed proper by the Court.

### PRAYER FOR RELIEF

5    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly
6 situated,  pray for judgment against Defendants as follows:

7    (a)    Certifying this action as a class action, appointing Plaintiffs as the Class
8          representatives, and designating the undersigned as Class Counsel;

9    (b)    A declaration that Defendants are financially responsible for notifying
10          Class Members of the pendency of this suit;

11    (c)    A judgment awarding Plaintiffs and all Class Members restitution and/or
12          other equitable relief, including, without limitation, restitutionary
13          disgorgement of all profits and unjust enrichment that Defendants
14          obtained from Plaintiffs and the Class as a result of the unlawful, unfair
15          and/or fraudulent business practices described herein;

16    (d)    A judgment awarding Plaintiffs and the Class damages under common
17          law and/or by statute, and punitive damages;

18    (e)    An order enjoining Defendants from continuing to violate the UCL
19          and/or FAL as described herein, and/or an order enjoying Defendants
20          from violating the UCL and/or FAL in the future;

21    (f)    Rescission of the equipment purchase and financing contracts due to
22          fraud, concealment, or failure of consideration;

23    (g)    Additional awards for physical, emotional, or economic damage for all
24          senior citizen and disabled Class Members, pursuant to California Civil
25          Code § 1780(b)(1);

26    (h)    A judgment awarding Plaintiffs and Class Members their costs of suit,
27          including reasonable attorneys' fees pursuant to Code of Civil Procedure

28

1    § 1021.5 and as otherwise permitted by statute or law, and pre- and post-

2    judgment interest; and

3    (i)    Granting such other and further relief as this Court may deem just and

4    proper.

5

6                                    Respectfully submitted,

7    Date: July 21, 2025              **SCHONBRUN SEPLOW HARRIS
                                      HOFFMAN & ZELDES, LLP**

8

9                              By: _/s/ Helen I. Zeldes_____
                                    Helen I. Zeldes, Esq. (SBN 220051)
10                                   *hzeldes@sshhzlaw.com*
                                     Amy C. Johnsgard, Esq. (SBN 279795)
11                                   *ajohnsgard@sshhzlaw.com*
                                     501 West Broadway, Suite 800
12                                   San Diego, California 92101
                                     Telephone: (619) 400-4990
13
                                     Joshua A. Fields (SBN 242938)
14                                   *jfields@sshhzlaw.com*
                                     9415 Culver Blvd., #115
15                                   Culver City, CA 90232-2616
                                     Tel: (619) 400-4990
16
                                     *Counsel for Plaintiffs*
17                                   *and the Proposed Class.*

18

19

20

21

22

23

24

25

26

27

28

1

## <u>DEMAND FOR JURY TRIAL</u>

2          Plaintiffs hereby demand a trial by jury for all claims so triable.

3

4                                          Respectfully submitted,

5     Date: July 21, 2025            **SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

6

7                              By: _/s/ Helen I. Zeldes_
                                    Helen I. Zeldes, Esq. (SBN 220051)
8                                    *hzeldes@sshhzlaw.com*
                                    Amy C. Johnsgard, Esq. (SBN 279795)
9                                    *ajohnsgard@sshhzlaw.com*
                                    501 West Broadway, Suite 800
10                                   San Diego, California 92101
                                    Telephone: (619) 400-4990
11
                                    Joshua A. Fields (SBN 242938)
12                                   *jfields@sshhzlaw.com*
                                    9415 Culver Blvd., #115
13                                   Culver City, CA 90232-2616
                                    Tel: (619) 400-4990
14
                                    *Counsel for Plaintiffs*
15                                   *and the Proposed Class.*

16

17

18

19

20

21

22

23

24

25

26

27

28

---